# No. 17-2141
# In the
# United States Court of Appeals
# for the
# Eighth Circuit

---

Troy K. Scheffler,

*Appellant,*

*v.*

Gurstel Chargo, P.A.,

*Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
NO. 15-CV-4436 (DSD-SER)

---

## BRIEF OF APPELLEE

DATED:  September 1, 2017

| /s/ *Manuel H. Newburger* | /s/ *Amy M. Goltz* |
|---|---|
| Manuel H. Newburger | Amy M. Goltz |
| Barron & Newburger, P.C. | Gurstel Chargo, P.A. |
| 7320 N. Mopac Expressway, Suite 400 | 6681 Country Club Drive |
| Austin, TX  78701 | Golden Valley, MN  55427 |
| Telephone: (512) 476-9103, Ext. 216 | Telephone:   (763) 267-6700 |
| Facsimile:  (512) 279-0310 | Facsimile:     (763) 267-6777 |
| mnewburger@bn-lawyers.com | a.goltz@gurstel.com |
| ATTORNEY FOR APPELLEE | ATTORNEY FOR APPELLEE |

## SUMMARY OF THE CASE AND
## REQUEST FOR ORAL ARGUMENT

Troy K. Scheffler ("Scheffler") brought this putative class action alleging that Gurstel Chargo, P.A.[1] ("Gurstel"), a Minnesota law firm, violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692c(c) and 1692e(10). Scheffler's claims arise from: (1) an August 11, 2015, cover letter that transmitted a copy of a post-judgment garnishment summons; and (2) a September 21, 2015, telephone call that was initiated by Scheffler in a patently obvious attempt to provoke litigation against Gurstel. The transcript of that call is at Appellee's Appendix 568   The recording of that call was filed as part of the record on June 15. 29117,

After considering the summary judgment evidence (including the recording), the District Court granted summary judgment in favor of Gurstel. Scheffler now appeals, recycling the same meritless arguments that were properly rejected by the District Court. The summary judgment in favor of Gurstel was well-founded, and it should be affirmed, both for the reasons stated by Judge Doty and on grounds raised in Gurstel's summary judgment motion but not ruled upon by Judge Doty.

Gurstel joins with Scheffler in requesting oral argument in this case.

---

[1] Gurstel Chargo, P.A. is now known as Gurstel Law Firm, P.C.

Appellate Case: 17-2141     Page: 2     Date Filed: 09/06/2017 Entry ID: 4576135

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1 and 28(b), Gurstel makes the following disclosure: Gurstel Chargo, P.A. (now known as Gurstel Law Firm, P.C.) is a Minnesota professional corporation. Its stock is not publicly traded and it is not owned, in whole or in part, by any publicly traded entity. It has no parent corporation.

iii

# TABLE OF CONTENTS

SUMMARY OF THE CASE………………………………………………………ii

CORORATE DISCLOSURE STATEMENT……………………...........................iii

TABLE OF CONTENTS…………….…..…..…………………………...…iv

TABLE OF AUTHORITIES……….…..……….….…………………………vi

JURISDICTIONAL STATEMENT.......................................................................1

STATEMENT OF ISSUES……….....................................................................1

STATEMENT OF THE CASE…………......………………………………3

SUMMARY OF THE ARGUMENT……………………………………..…….10

ARGUMENT…………………………………………………………………...12

    1.    SUMMARY JUDGMENT STANDARD…………………...……12

    2.    THE DISTRICT COURT APPLIED THE UNSOPHISTICATED CONSUMER STANDARD TO SCHEFFLER'S CLAIMS…,,,,,,…13

    3.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON SCHEFFLER'S § 1692c(c) CLAIM…………………………………………………………16

        A.    GURSTEL NOTIFIED SCHEFFLER OF A SPECIFIED REMEDY IN ITS AUGUST 11, 2015 COVER LETTER…………………….…………….…………17

        B.    SALTER'S CONVERSATION WITH SCHEFFLER ON SEPTEMBER 21, 2015 DID NOT VIOLATE SCHEFFLER'S PRIOR CEASE……………….……………22

        C.    SCHEFFLER WAIVED THE CEASE BY CALLING GURSTEL ON SEPTEMBER 21, 2015…..……..25

Appellate Case: 17-2141    Page: 4    Date Filed: 09/06/2017 Entry ID: 4576135

4. THE DISTRICT COURT PROPERLY GRANTED
SUMMARY JUDGMENT ON SCHEFFLER'S § 1692e(10)
CLAIM……………………………………………………………29

    A. GURSTEL'S NOTIFICATION OF THE
GARNISHMENT AND INVITATION TO TALK
TO A COLLECTION REPRESENTATIVE IN ITS
AUGUST 11, 2015 COVER LETTER WAS NOT A
FALSE, MISLEADING OR DECEPTIVE
REPRESENTATION………………….…….…….……...29

    B. NO "BAIT AND SWITCH" OCCURRED HERE………..…34

5. SCHEFFLER IS JUDICIALLY ESTOPPED FROM
PROSECUTING THIS LITIGATION……………….…….…36

    A. INTRODUCTION………………………..…….…….…...36

    B. JUDICIAL ESTOPPEL….………….…..……………..38

CONCLUSION………………………………………………...45

CERTIFICATE OF COMPLIANCE WITH WORD LIMITS…………………46

CERTIFICATE OF SERVICE……………………………………47

v

# TABLE OF AUTHORITIES

**CASES**                                                              **PAGE**

*Adkins v. E.I.Du Pont de Nemours & Co.*, 335 U.S. 331, 69 S. Ct. 85,
93 L. Ed. 43 (1948)………………………………………………………………41

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505,
91 L. Ed. 2d 202 (1986)……………………………………….…………….…..12

*Backlund v. Messerli & Kramer, P.A.*, 964 F. Supp. 2d 1010
 (D. Minn. 2010) …………………………………………………………………25

*Bishop v. Glazier*, 723 F.3d 957 (8th Cir. 2013)………………..…..…………13, 36

*Calhoun v. Wal-Mart*, 2007 U.S. Dist. LEXIS 31918
(E.D. Mo. May 1, 2007), *aff'd at* 330 Fed. Appx. 119,
2009 U.S. App. LEXIS 17382 (8th Cir. 2009)…………………………………38

*Campbell v. Credit Prot. Ass'n, L.P.*, Case No. 4:12CV00289AGF,
2013 U.S. Dist. LEXIS 45004 (E.D. Mo. March 27, 2013)………………………14

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548,
91 L. Ed. 2d 265 (1986)…………………………………………..……………..……12

*Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944 (7th Cir. 2004)……..…..14

*Clark v. Capital Credit & Collection Servs.*,
460 F.3d 1162 (9th Cir. 2006) …………….…………………………2, 25, 27, 28

*Cover v. J.C. Penney Corp.*, No. 15-515 (RHK/SER),
2016 U.S. Dist. LEXIS 66964  (D. Minn. May 20, 2016)……..…..……………39

*Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110 (8th Cir. 2009)…………..13

*Duffy v. Landberg*, 215 F.3d 871 (8th Cir. 2000)………………..………..14, 30

*Globe Grain & Milling Co. v. De Tweede Northwestern
& Pacific Hypotheekbank*, 69 F.2d 418 (9th Cir. 1934….…………………..………27

*Golden v. Newsome*, 173 Ga. App. 321, 326 S.E.2d 521 (Ga. Ct. App. 1985)…...41

*Guimaraes v. SuperValu, Inc.*, 674 F.3d 962 (8th Cir. 2012)……………..……13

*Harvey v. S. Minn. Beet Sugar Coop.*, No. 02-4934 (PAM/RLE),
2004 U.S. Dist. LEXIS 2923 (D. Minn. Feb. 26, 2004)……………………2, 38, 39

Appellate Case: 17-2141    Page: 6    Date Filed: 09/06/2017 Entry ID: 4576135

*Heintz v. Jenkins*, 514 U.S. 291 (1995)…………………………………...19, 20, 21

*Huebner v. Midland Credit Mgmt.,* No. 14 Civ. 6046 (BMC),
2016 U.S. Dist. LEXIS 156246 (E.D.N.Y. November 10, 2016)…...…………2, 33

*In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir.1999)…………………………..38

*Johnson v. Outboard Marine Corp.*, 172 F.3d 531 (8th Cir. 1999)………………..13

*Lewis v. ACB Business Services*, 135 F.3d 389 (6th Cir. 1998)…………………...28

*Lindley v. TRS Recovery Associates, Inc.*, No. 2:12-CO-109, 2012 U.S.
Dist. LEXIS 175935 (S.D. Tex., December 12, 2012). …………1, 2, 12, 18, 19, 30

*Mabbitt v. Midwestern Audit Serv., Inc.*, No. 07-11550,
2008 U.S. Dist. LEXIS 20446 (E.D. Mi. Mar. 17, 2008)……………….…19, 30

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)…………………………………………12

*McMurray v. ProCollect, Inc.* 687 F.3d 665, 669 (5th Cir. 2012)…………....…….28

*Nash v. Optomec, Inc.*, 849 F.3d 780 (8th Cir. 2017)……………………….......13

*New Hampshire v. Maine*, 532 U.S. 742, 121 S. Ct. 1808,
149 L. Ed. 2d 968 (2001)…………………………………………………….………38

*Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208 (1st Cir. 1987)….…36

*Peters v. General Service Bureau, Inc.*, 277 F.3d 1051
(8th Cir. 2002)… ……….…………………………………………………1, 2, 14, 15, 30
*Scheffler v. Messerli & Kramer, P.A.*, 791 F.3d 847
(8th Cir. 2015) (*per curiam*), *cert. denied*, 136
S. Ct. 554, 193 L. Ed. 2d 443 (2015)… …………………………….……………1, 18

*Scott v. Harris*, 550 U.S. 372, 137 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)……..…13

*Shayesteh v. Raty*, 404 Fed. Appx. 298,
2010 U.S. App. LEXIS 25246 (10th Cir. 2010)…………………….……..……2, 42

*Stallings v. Hussmann Corp.*, 447 F.3d 1041 (8th Cir. 2006)…….………………38

*Strand v. Diversified Collection Serv.*, 380 F.3d 316 (8th Cir. 2004)………1, 14, 15

*Troy K. Scheffler v. Messerli & Kramer, P.A.*, 791 F.3d 847
(8th Cir. 2015) (per curiam), *cert. denied*,
136 S. Ct. 554, 193 L. Ed. 2d 443 (2015)…………….………………1, 17, 18, 25, 31

Appellate Case: 17-2141    Page: 7    Date Filed: 09/06/2017 Entry ID: 4576135

*Turner v. Asset Acceptance, LLC*, 302 F.Supp.2d 56 (E.D.N.Y. 2004)………1, 18

*United States ex rel. Gebert v. Transp. Admin. Servs.*,
260 F.3d 909 (8th Cir. 2001)………………………………………………..2, 38

*Van Horn v. Martin*, 812 F.3d 1180 (8th Cir. 2016)…………..…….…2, 38, 42, 44

*Weber v. Prof'l Claims Bureau, Inc.*, 2017 U.S. Dist. LEXIS
109904, (E.D.N.Y. July 14, 2017)……………… ……………………..………34

*White v. Goodman*, 200 F.3d 1016 (7th Cir. 2000)……………………………14, 28

## **STATUTES**                                               **PAGE**

15 U.S.C. § 1692c(c)…………………………….…...6, 7, 16, 17, 19, 21, 22, 29

15 U.S.C. § 1692e(10)……………………………….…………………6, 7, 15

15 U.S.C. § 1692e(11)………………………….…………………..4, 10, 21

18 U.S.C. § 1001 …………………….…………….……….…………….41

## **RULES**                                                **PAGE**

Fed. R. Civ. P. 56(a)…………………………………………………12, 13

D. Minn. L.R. 4.2(a)(2)…………………….……………………………40

## **OTHER SOURCES**                                **PAGE**

S.Rep. No. 95-382 at 1 (1977), *reprinted* in
1977 U.S.C.C.A.N. 1695, 1696, 1698-99……………………………………..27, 28

Appellate Case: 17-2141    Page: 8    Date Filed: 09/06/2017 Entry ID: 4576135

# JURISDICTIONAL STATEMENT

Subject matter jurisdiction is not contested in this case.

# STATEMENT OF ISSUES

1.   Did the District Court apply the proper standard (that of the unsophisticated consumer) in granting summary judgment to Gurstel?

***Apposite authority:***

*Peters v. General Service Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002)

*Strand v. Diversified Collection Serv.*, 380 F.3d 316, 317-18 (8th Cir. 2004)

2.   Did the District Court properly grant summary judgment that Gurstel did not violate Scheffler's "cease" rights under 15 U.S.C. § 1692c(c) in either the August 11, 2015, cover letter or the September 21, 2015, telephone call?

***Apposite authority:***

*Scheffler v. Messerli & Kramer, P.A.*, 791 F.3d 847 (8th Cir. 2015) (*per curiam*), *cert. denied*, 136 S. Ct. 554, 193 L. Ed. 2d 443 (2015)

*Lindley v. TRS Recovery Associates, Inc.*, No. 2:12-CO-109, 2012 U.S. Dist. LEXIS 175935 (S.D. Tex., December 12, 2012)

*Turner v. Asset Acceptance, LLC*, 302 F.Supp.2d 56, 58 (E.D.N.Y. 2004)

3.   Did the District Court properly grant summary judgment to Gurstel and dismiss Scheffler's 15 U.S.C. § 1692c(c) claim on the ground that Scheffler knowingly and voluntarily waived his prior FDCPA cease against Gurstel by his words and conduct during the September 21, 2015 telephone call?

1

*Apposite authority:*

*Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1168 (9th Cir. 2006)

4.    Did the District Court properly grant summary judgment to Gurstel and dismiss Scheffler's 15 U.S.C. § 1692e(10) claim with respect to the August 11, 2015 cover letter's invitation to call and speak to a collection representative?

*Apposite authority:*

*Huebner v. Midland Credit Mgmt.,* No. 14 Civ. 6046 (BMC), 2016 U.S. Dist. LEXIS 156246 (E.D.N.Y. November 10, 2016)

*Peters v. General Service Bureau, Inc.*, 277 F.3d 1051 (8th Cir. 2002)

*Lindley v. TRS Recovery Associates, Inc.*, No. 2:12-CO-109, 2012 U.S. Dist. LEXIS 175935 (S.D. Tex., December 12, 2012)

5.    Should the summary judgment be affirmed on judicial estoppel grounds raised by Gurstel in its summary judgment motion but not ruled on by the District Court?

*Apposite authority:*

*Van Horn v. Martin*, 812 F.3d 1180, 1182 (8th Cir. 2016)

*United States ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909, 919 (8th Cir. 2001)

*Harvey v. S. Minn. Beet Sugar Coop.*, No. 02-4934 (PAM/RLE), 2004 U.S. Dist. LEXIS 2923, *5 (D. Minn. Feb. 26, 2004)

*Shayesteh v. Raty*, 404 Fed. Appx. 298, 2010 U.S. App. LEXIS 25246 (10th Cir. 2010).

Appellate Case: 17-2141    Page: 10    Date Filed: 09/06/2017 Entry ID: 4576135

# STATEMENT OF THE CASE[1]

Scheffler incurred an acknowledged credit card debt to Discover Bank in the amount of $9,896.90. (SAC, ¶¶ 5-7; ECF Nos. 62, 74, 74-2; Appellant's Appendix 302, 314-16, 321). Gurstel represented Discover Bank in suing Scheffler on that debt. On July 31, 2009, Gurstel obtained a judgment against Scheffler for Discover Bank. (SAC, ¶ 6; Answer ¶ 6; ECF 62, 63; Appellant App. 302, Appellee App. 14). That judgment was never appealed.

Five years later, on August 3, 2014, Scheffler mailed Gurstel a "cease and desist letter.\," Gurstel has acknowledged receipt of that letter. (SAC, ¶ 17; Answer ¶ 17; Appellant App. 302, Appellee App. 16. On August 11, 2015, Gurstel mailed to Scheffler a copy of a garnishment summons that had been served on Financial One Credit Union in an attempt to enforce the judgment, together with a cover letter that stated, in pertinent part:

> These documents were served upon Financial One Credit Union, on or about August 6, 2015. If you have any questions, please contact one of our collection representatives at 1-800-514-0791.

---

[1] For purposes of this Brief, Gurstel will refer to Scheffler's Second Amended Complaint as "SAC" and will refer to its Answer to Scheffler's Second Amended Complaint as "Answer." For all other documents (including the recording of the September 21, 2015 call) filed with the District Court, Gurstel will refer to those documents as "ECF No." and Gurstel will also refer to its page number in the Appendix on Appeal as "App."

3

(SAC, ¶ 19; Answer ¶ 19; ECF Nos. 74, 74-4; Appellant App. 303, 314-316, 336-37, Appellee App. 16). Consistent with 15 U.S.C. § 1692e(11), the cover letter also stated: "This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose." (SAC, ¶ 10; ECF No. 74-4; Appellant App. 302, 336-337, Appellee App. 15.[2]

On September 21, 2015, Scheffler called Gurstel at the telephone number provided in the cover letter. (ECF Nos. 68, 68-1 (Exhibit 2), 68-3, 69, 74, 74-4; Appellant App. 314-16, 336-37, Appellee App. 70-75, 90-97, 566-567, 568.) He spoke to John Thomas Salter, a collection representative employed by Gurstel. (*Id.*) , Scheffler engaged in conversation with Salter, asked questions, and responded to answers from Salter. (*Id.*) At no time did Scheffler demand that the call end or that he be connected to an attorney. (*Id.*). At no time did Salter refuse to end the call or refuse to allow Scheffler to speak to an attorney. (*Id.*)

In fact, Scheffler did not ask any questions about the garnishment notice beyond asking why Gurstel sent it to him:

> Salter: Are you calling in regards to the, the garnishment disclosure you received?
>
> Scheffler: Well yeah I mean I got that. I mean you guys have on here call if I have any questions. So, I

---

[2] Scheffler had previously served a similar "cease letter" in 2008, and Gurstel had served on Scheffler a similar summons and transmittal letter on a garnishment in July, 2014. No litigation ensued, and the previous, similar events are not relevant to this appeal or the present action.

**4**

[unintelligble]. (Salter interrupts)

Salter: Alright, so what's the what's the question you have?

Scheffler: Well, I guess why are you guys sending this stuff to, to I don't know, I don't even know why you guys are bothering really to be honest with you.

(*Id*.) Instead, Scheffler actually invited an offer to resolve the debt:

Salter: What's your confusion? You have twelve thousand nine hundred and twenty dollar debt that they're trying to recover.

Scheffler: Ok, so what am I going to do about that?

Salter: Are you able to pay it?

Scheffler: No.

Salter: Ok. Uhh, are you in a position to where you wanna try to resolve it?

Scheffler: Well I mean possibly at some point, I mean what are you saying, what are you offering?

(*Id*.) When Scheffler accused Salter of trying to collect on the debt, Salter responded "You called me, right?" Salter eventually told Scheffler: "I mean I don't wanna go round and round with you. If your intent is to not resolve it that's fine; or if you don't have the ability to do so that's fine." (*Id*.) The call concluded soon thereafter. (*Id*.)

On November 20, 2015, two months following his call to Salter, Scheffler served on Gurstel a Hennepin County district court suit, claiming that Gurstel

**5**

violated 15 U.S.C. § 1692c(c), and that as a result, he had suffered actual damages. (ECF No. 1-1; Appellant App. 15-21).  Gurstel timely removed the case on December 21, 2015.  (ECF No. 1; Appellant App. 12-14).

On April 13, 2016, Scheffler filed a First Amended Complaint, continuing to assert that he had suffered actual damages but also seeking to certify this case as a class action.  Scheffler alleged individually and on behalf of a putative class that Gurstel's cover letter violated 15 U.S.C. §§ 1692c(c) and 1692e(10).  (*Id.*) According to Scheffler, Gurstel's cover letter was a "bait and switch" ploy designed to trick him into believing that a call to the toll-free number provided would be answered by an attorney and thus get him to call, only to then "switch" him to a collector who would insist on discussing the debt with him.  (*Id.*) However, as Judge Doty recognized, the letter made no promise that Scheffler's call would be answered by an attorney or that he would get to talk to an attorney. In fact, Scheffler never asked to speak to an attorney, and it was undisputed at the time of the summary judgment hearing that had he asked to speak to an attorney it was Gurstel's policy to connect him to one of its attorneys.  The following statements in the Declaration of Amy M. Goltz were clear, unequivocal, and free from doubt or contradiction by any shred of summary judgment evidence:

> The number 800-514-0791 is one of a number of general, inbound numbers used by Defendant. That number, like other, general inbound numbers used by Defendant, is answered by non-attorneys.

**6**

In its collection practice Defendant employs collection representatives, some of whom are attorneys and some of whom are not. Although Defendant's general inbound numbers are answered by nonattorneys, it is the official policy of Defendant that any caller who demands to speak to an attorney is to be permitted to do so. Failure to adhere to that policy is grounds for employee discipline, including the possibility of termination.

(ECF No. 68; Appellee App. 72).

On March 1, 2017, Scheffler filed a Second Amended Complaint. (ECF No. 62; Appellant App. 301-313), in which he finally abandoned his false claims of actual damages. That same day, Gurstel filed its motion for summary judgment. (ECF Nos. 64-69; Appellee App. 28-568). Gurstel asserted that, as a matter of law, it did not violate Scheffler's cease and desist rights under 15 U.S.C. § 1692c(c) merely because the cover letter provided a number to call to talk to a collection representative if Scheffler had any questions. (ECF Nos. 66, 76; Appellee App. 30-53, 569-580). Gurstel also asserted that Scheffler waived his § 1692c(c) claim through his own words and conduct during the September 21, 2015 telephone call that he voluntarily placed. (*Id.*)

With respect to Scheffler's § 1692e(10) claim, Gurstel asserted that, as a matter of law, its August 11, 2015, cover letter was neither deceptive nor misleading. (*Id.*) Gurstel also asserted that nothing said by Salter during the phone conversation was untrue, deceptive, or misleading. (*Id.*) Scheffler's words

**7**

and conduct during the September 21, 2015 conversation negated his "bait and switch" allegations and made it patently obvious to any reasonable factfinder that he placed the call to Gurstel in an attempt to provoke or manufacture an FDCPA claim. (*Id*.)

Finally, Gurstel asserted that Scheffler is judicially estopped from prosecuting this lawsuit because he has made statements to courts, under oath, that negate the existence of his claims. Specifically, in three other cases that were filed when he knew of his claims in this case, Scheffler sought and obtained *in forma pauperis* (IFP) orders predicated upon IFP affidavits that concealed the existence of his alleged claims against Gurstel. (*Id*.) In those three affidavits Scheffler answered "0.00" in the "other assets" category rather than disclose the existence of this case. Scheffler cannot even assert lack of understanding or sophistication, As two of those affidavits were filed by the same attorney who represents him in this action. Thus, he is judicially estopped from prosecuting this action. (*Id*.)

Following a hearing on April 19, 2017, Judge David S. Doty granted Gurstel's motion for summary judgment. (ECF No. 78; Appellant App. 372-381). In ruling that Gurstel did not violate § 1692c(c), Judge Doty expressly rejected the argument of Scheffler's counsel at the summary judgment hearing that Gurstel "subliminally commanded" him to call the number by putting it in bold type in the August 11, 2015 cover letter. (*Id*.)

Appellate Case: 17-2141    Page: 16    Date Filed: 09/06/2017 Entry ID: 4576135

Judge Doty noted that he had listened several times to the recording of the conversation between Scheffler and Salter, and he found that Salter handled the call appropriately. (*Id.*) He also found that Salter only asked Scheffler about resolving the debt after Scheffler first said "Ok, so what am I going to do about that [referring to the debt]?" Judge Doty further found:

> When reviewed as a whole, the call was an unsubtle and ultimately unsuccessful attempt to provoke Salter into committing an FDCPA violation. At no time did Gurstel, either in writing or in the telephone call, demand payment on the debt or otherwise violate the FDCPA as alleged. Indeed, rather than pressuring Scheffler to pay the debt, Salter simply said, "If your intent is to not resolve it that's fine; or if you don't have the ability to do so that's fine."

(*Id.*) Finally, Judge Doty found that even if it could be construed that Gurstel attempted to collect on the debt, Scheffler's conduct and words constituted a waiver of his prior cease and desist letter. (*Id.*)

With respect to Scheffler's claim that Gurstel violated § 1692e(10), Judge Doty rejected Scheffler's argument that the August 11, 2015, cover letter falsely indicated he could call the number on the letter to discuss the garnishment notice with a lawyer. (*Id.*) Judge Doty stated:

> Scheffler's argument is unavailing. The letter does not state that the number provided will be answered by an attorney prepared to answer questions solely about garnishment. Rather, the letter expressly notified Scheffler that he could contact a "collection representative" by calling the number. And he in fact spoke with a collection representative when he called. As a result,

**9**

there is nothing deceptive about the information provided in the letter. It certainly was not deceiving to Scheffler, whose experience in debt collection and FDCPA litigation belies his grievance, but neither would it be deceiving to an unsophisticated consumer.

(*Id.*). Judge Doty further found that inclusion of the mini-Miranda notice mandated by 15 U.S.C. § 1692e(11) did not transform the transmittal letter into an FDCPA violation. (*Id.*)

In his opening brief, Scheffler repeats the same arguments that he made in his summary judgment response brief and in oral argument at the summary judgment hearing, all of which Judge Doty carefully considered and properly rejected. The judgment of the Court below should be affirmed both for the reasons stated by Judge Doty and on the judicial estoppel grounds not addressed by Judge Doty.

## SUMMARY OF THE ARGUMENT

The summary judgment in favor of Gurstel should be affirmed for four principal reasons. First, contrary to Scheffler's assertion, Judge Doty both discussed and applied the unsophisticated consumer standard in his Order. Scheffler erroneously equates the District Court's accurate acknowledgment that he is an experienced and frequent FDCPA plaintiff with the failure to apply the correct legal standard. The summary judgment order shows on its face that the correct standard was applied.

10

Second, Judge Doty properly found that Gurstel did not violate 15 U.S.C. § 1692c(c) by inviting Scheffler to call if he had any questions about the garnishment. Scheffler has repeatedly tried to characterize the invitation as a bait and switch; however, the only bait and switch in this case was Scheffler's pretext that he called Gurstel to ask a lawyer questions about the garnishment when it is clear that his true purpose was to manufacture an FDCPA claim. After reading the plain language of the letter and listening to the recording of the conversation at issue, Judge Doty correctly found that the letter did not violate Scheffler's FDCPA cease and that Scheffler waived his cease request through his words and conduct during the call that he chose to initiate.

Third, Judge Doty properly found that Gurstel did not violate § 1692e(10). The transmittal letter speaks for itself, as do the recording and transcript of the call. There was nothing false, misleading, or deceptive in either the transmittal letter or Salter's conduct during the call.

Finally, the summary judgment should be affirmed on the alternative grounds not addressed by Judge Doty but which were raised and briefed by Gurstel in its summary judgment motion. At a time when he knew of, and was prosecuting, his claims in this case Scheffler failed to disclose such claims in three affidavits, in which he was required to disclose all of his assets. Judges relied on those affidavits, resulting in IFP orders in the other cases that allowed Scheffler to

**11**

proceed without payment of costs. The use of those affidavits to secure judicial relief judicially estops Scheffler from asserting his claims in this case.

## ARGUMENT

### 1.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A trial court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

Summary judgment should be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a

12

genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 113 (8ᵗʰ Cir. 2009). If the plaintiff's version of events "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt the version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 137 S. Ct. 1769, 167 L. Ed. 2d. 686 (2007).

This Court reviews the grant of summary judgment by the District Court *de novo*. *Nash v. Optomec, Inc.*, 849 F.3d 780, 783 (8ᵗʰ Cir. 2017); *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 971 (8ᵗʰ Cir. 2012). After viewing the facts and evidence in the light most favorable to Scheffler the Court must affirm the judgment if "there is no genuine dispute as to any material fact." Fᴇᴅ. R. Cɪᴠ. P. 56(a); *see also Nash*, 849 F.3d at 783. If the record taken as a whole could not lead a rational trier of fact to find for Scheffler, there is no genuine issue for trial and summary judgment was proper. *Id.* This Court "may uphold a grant of summary judgment for any reason supported by the record, even if different from the reasons given by the district court." *See, e.g.*, *Bishop v. Glazier*, 723 F.3d 957, 961 (8ᵗʰ Cir. 2013) (citing *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8ᵗʰ Cir. 1999)). The summary judgment should be affirmed not only for the reasons stated by Judge Doty but also for reasons presented to him, on which he did not rule.

13

**2.     THE DISTRICT COURT APPLIED THE "UNSOPHISTICATED CONSUMER" STANDARD TO SCHEFFLER'S CLAIMS**

The Eighth Circuit has adopted the unsophisticated consumer standard to determine if collection letters and communications with consumers violate the FDCPA. *See, e.g.*, *Peters v. General Service Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002) (*citing Duffy v. Landberg*, 215 F.3d 871, 873 (8th Cir. 2000)). "The unsophisticated consumer test is a practical one, and statements that are merely 'susceptible of an ingenious misreading' do not violate the FDCPA." *Peters*, at 1056 (*citing White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000)). This Court has explained:

> [T]he unsophisticated-consumer standard...is designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung on the sophistication ladder.  This standard protects the uninformed or naive consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collections letters.

*Strand v. Diversified Collection Serv.*, 380 F.3d 316, 317-18 (8th Cir. 2004) (internal quotations and citations omitted).  "[I]t is proper to assume that an 'unsophisticated consumer' would be confused or misled only if a 'significant fraction' of people would be similarly misled." *Campbell v. Credit Prot. Ass'n, L.P.*, Case No. 4:12CV00289AGF, 2013 U.S. Dist. LEXIS 45004, at *13-14 (E.D. Mo. March 27, 2013) (citing *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F. 3d

**14**

944, 949 (7th Cir. 2004)). "In this context, unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters are rejected." *Campbell*, 2013 U.S. Dist. LEXIS 45004, at *13-14 (internal quotations and citations omitted).

In his opening brief, Scheffler asserts that the District Court failed to apply the unsophisticated consumer standard to his FDCPA claims. (Appellant's Brief, pp. 1, 20, 29). This argument lacks merit and can be quickly disposed of by a simple reading of the District Court's Order. Judge Doty discussed the unsophisticated consumer standard on pages 5 and 6 of his Order and specifically cited to this Court's opinions in *Strand* and *Peters*. (ECF No. 78; Appellant App. 376-377). Furthermore, in dismissing Scheffler's § 1692c(c) claim on the additional basis that Scheffler had waived that claim, Judge Doty stated: "His waiver was thus knowing and voluntary, *just as it would be were he an unsophisticated debtor*." (ECF No. 78; Appellant App. 379) (emphasis added). Similarly, in dismissing Scheffler's § 1692e(10) claim, Judge Doty stated:

> As a result, there is nothing deceptive about the information provided in the letter. It certainly was not deceiving to Scheffler, whose experience in debt collection and FDCPA litigation belies his grievance, but *neither would it be deceiving to an unsophisticated consumer*.

(ECF No. 78; Appellant App. 380) (emphasis added).

Although Scheffler is indisputably a professional plaintiff who is both sophisticated with regard to the FDCPA and engaged in entrepreneurial litigation,

15

Judge Doty's ruling was not based upon those facts. The assertion that District Court failed to apply the unsophisticated consumer standard is simply frivolous. The summary judgment order shows on its face that the correct standard was applied.

## 3.   THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON SCHEFFLER'S § 1692c(c) CLAIM.

Scheffler claims that Judge Doty erred in granting summary judgment on his § 1692c(c) claim for three reasons:  First, he argues that the cover letter's invitation for him to contact a collection representative if he had any questions about the garnishment documents was actually a "directive" compelling him to contact Gurstel.  He says that when coupled with the FDCPA's mini-Miranda language at the conclusion of the letter, the supposed directive constitutes a violation of § 1692c(c) because of his prior cease and desist notices to Gurstel.  (Appellant's Brief, pp. 21-22).  Next, he argues that after he specifically informed Salter during the September 21, 2015 that he was calling "about the garnishment summons only – directed against a bank in which he had no assets – only to have Salter pitch an offer settle (sic) the debt in spite of the known cease" constitutes a violation of § 1692c(c).  (*Id*.)  Finally, he argues that fact issues exist which precluded Judge Doty's finding that he knowingly and voluntarily waived his prior cease.  (*Id.*, at p. 22).  As explained below, all of Scheffler's arguments lack merit.

16

### A. Gurstel notified Scheffler of a specified remedy in its August 11, 2015 cover letter.

The FDCPA allows a consumer to cut off certain types of communications by sending what is commonly known as a "cease" or a "C&D":

> (c) Ceasing communication. If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—
>
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy. If such notice from the consumer is made by mail, notification shall be complete upon receipt.

15 U.S.C. § 1692c(c). The statute expressly authorizes a debt collector to communicate, even after receiving a cease letter, to notify the consumer that certain remedies are going to be invoked.

The letter of which Scheffler complains merely served to transmit a copy of the post-judgment garnishment that Gurstel had served for its client. On its face the letter notified Scheffler that Gurstel was seeking to exercise the remedy of a garnishment against his bank account, a fact that Scheffler admitted (ECF No. 68-2, Scheffler Dep., p. 151, l. 5-13). It is therefore clear that the letter fell squarely within the exception provided by Section 1692c(c)(3).

This is not Scheffler's first attempt to argue that a transmittal letter falls outside the scope of the Section 1692c(c)(3) exemptions. In *Scheffler v. Messerli & Kramer, P.A.*, 791 F.3d 847 (8th Cir. 2015) (*per curiam*), *cert. denied*, 136 S. Ct. 554, 193 L. Ed. 2d 443 (2015), this Court held that a garnishment transmittal letter was a permissible communication that did not violate a cease request. Scheffler tries to evade the holding in that case and the exemption provided by Section 1692c(c) by claiming that Gurstel's invitation to call if he had any questions transformed the letter into an FDCPA violation. He seeks to punish Gurstel for the courtesy of offering to answer questions regarding the document that its cover letter transmitted. Such a position runs contrary to the efforts of courts throughout the country to improve lawyer civility. As one court has observed, "while Congress enacted the FDCPA in order to address many odious practices used by the debt collection industry, friendliness was not one of those odious practices." *Turner v. Asset Acceptance, LLC*, 302 F.Supp.2d 56, 58 (E.D.N.Y. 2004).

The primary distinction between Gurstel's letter and the one at issue in *Messerli* is that Gurstel's letter provided a number to call if Plaintiff had questions. In a strikingly similar case, *Lindley v. TRS Recovery Associates, Inc.*, No. 2:12-CO-109, 2012 U.S. Dist. LEXIS 175935 (S.D. Tex., December 12, 2012), the plaintiff complained of a post-C&D letter that included the statement: "If I can be

Appellate Case: 17-2141    Page: 26    Date Filed: 09/06/2017 Entry ID: 4576135

of further assistance, please do not hesitate to contact me at xxx.xxx.xxxx or toll free at xxx.xxx.xxxx ext. xxxx."  The *Lindley* court concluded that "[c]ontrary to Lindley's argument, the letter's invitation for Lindley to call if he needed any assistance did not transform this informative letter into an effort to collect the debt."  *Id*. at *13 (citing *Mabbitt v. Midwestern Audit Serv., Inc.*, No. 07-11550, 2008 U.S. Dist. LEXIS 20446, at *4 (E.D. Mi. Mar. 17, 2008) for the proposition that an invitation to call is a mere courtesy).

Judge Doty stated that he was "unpersuaded by Scheffler's argument -- made during the hearing on this matter -- that Gurstel 'subliminally commanded' him to call the number provided by putting it in bold type."  (ECF No. 78; Appellant App. 378).  In a similar bit of creative fiction, Scheffler's opening brief characterizes the letter as a "**directive** to contact one of Gurstel's collection representatives concerning the accompanying garnishment summons." (Appellant's Brief, p. 21) (emphasis added).  Nowhere does the letter mandate or command Scheffler to call Gurstel.  The sentence he complains of is nothing more than an invitation for him to call if he had any questions.

The Supreme Court recognized in *Heintz v. Jenkins*, 514 U.S. 219 (1995), that the exceptions set forth in Section 1692c(c)(2) and (3) serve to prevent a debtor from using the statute as a tool to shut down litigation:

> We agree with Heintz that it would be odd if the Act empowered a debt-owing consumer to stop the

"communications" inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt. But, it is not necessary to read § 1692c(c) in that way -- if only because that provision has exceptions that permit communications "to notify the consumer that the debt collector or creditor may invoke" or "intends to invoke" a "specified remedy" (of a kind "ordinarily invoked by [the] debt collector or creditor"). §§ 1692c(c)(2), (3). Courts can read these exceptions, plausibly, to imply that they authorize the actual invocation of the remedy that the collector "intends to invoke." The language permits such a reading, for an ordinary court-related document does, in fact, "notify" its recipient that the creditor may "invoke" a judicial remedy. Moreover, the interpretation is consistent with the statute's apparent objective of preserving creditors' judicial remedies.

*Id.*, at 296. Scheffler's claim runs contrary to both the text of the statute and its interpretation by the Supreme Court.

Scheffler acknowledges in his opening brief that sending a garnishment notice to a debtor subsequent to an FDCPA cease is not an FDCPA violation. (Appellant's Brief, p. 21). That should be the end of the discussion. Gurstel's letter did exactly what Scheffler concedes is permitted. Scheffler argues that inclusion of the mini-Miranda notice in Gurstel's letter transforms the letter from a courteous offer to answer questions about the document transmitted into a § 1692c(c) violation:

> ….(a) inclusion in the garnishment summons cover letter of a directive to **contact one of Gurstel's collection representatives** concerning the accompanying garnishment summons, with the explicit statement that it

Appellate Case: 17-2141    Page: 28    Date Filed: 09/06/2017 Entry ID: 4576135

> "is an attempt to collect a debt", despite two cease and
> desist notices upon the Gurstel, violates §1692c(c)…

(Appellant's Brief, at p. 21) (emphasis in Appellant's Brief).

Of course, 15 U.S.C. § 1692e(11) *required* Gurstel to let Scheffler know in every communication that it was acting as a debt collector. The purpose of this is not to *command* a call but to warn against a call. The cease provision of the FDCPA, 15 U.S.C. § 1692c(c)(3) expressly authorized Gurstel to "notify the consumer that the debt collector or creditor intends to invoke a specified remedy." That is precisely what Gurstel did. Section 1692c(c)'s exceptions do not exempt a debt collector from complying with Section 1692e(11), and the FDCPA must therefore be read to compel use of a mini-Miranda notice, even when notifying a consumer of the invocation of a specified remedy.

Sheffler nevertheless, cites to *Heintz* for the purported proposition that there is "no requirement to include 'mini-Miranda' on specified judicial remedies." (Appellant's Brief, p. 21, fn. 4). Such an assertion cannot be supported by *Heintz*. The question before the Supreme Court in *Heintz* was whether the defendant law firm was a debt collector. The Court held that it was, based on the clear text of the Act. The text of the FDCPA required Gurstel, as a debt collector, to include the FDCPA's mini-Miranda in every communication that is not a "formal pleading." *See* 15 U.S.C. § 1692e(11). The contention that Gurstel should not have included the mini-Miranda notice in its transmittal letter is simply baseless, and there can be

**21**

little (if any) doubt that if Gurstel had omitted the mini-Miranda notice from its letter Scheffler would have sued it for that omission as well.

Judge Doty correctly found that Gurstel's letter did not violate 15 U.S.C. § 1692c(c). The letter merely informed Scheffler of the invocation of a remedy, and neither the courtesy of offering a number to call if Scheffler had questions nor the inclusion of the mini-Miranda converted the transmittal letter into an FDCPA violation. Scheffler's interpretation of the letter strays into the realm of "unrealistic, peculiar, bizarre, and idiosyncratic interpretation" that the case law forbids, and the summary judgment should therefore be affirmed.

### B. Salter's conversation with Scheffler on September 21, 2015 did not violate Scheffler's prior cease.

Scheffler contends that Judge Doty erroneously granted summary judgment to Gurstel because Gurstel violated his prior cease during the call with Salter. Specifically, he claims:

> …(b) after specifically informing Gurstel's representative that he called concerning the garnishment summons only – directed against a bank in which he had no assets – only to have Salter pitch an offer settle the debt in spite of the known cease, violated §1692c(c), ADD27-31…

(Appellant's Brief, pp. 21-22). Gurstel submitted as summary judgment evidence both a transcript of the September 21, 2015 phone call, as well as the recording of the phone call. (ECF Nos. 68-1, Ex. 2, 68-3, Ex. 13, 69; Appellee Appendix 90-

Appellate Case: 17-2141     Page: 30     Date Filed: 09/06/2017 Entry ID: 4576135

97, 566-567, 568.) Both the transcript and the recording of the call reveal the

disingenuous nature of Scheffler's assertion:

> Scheffler claims that he called only to ask questions about the garnishment notice but that Thomas "insisted on attempting to collect the debt." Second Am. Compl. ¶ 28. The call, which the court has listened to several times, tells a different story. See Scheffler Decl. Ex. E; Goltz Decl. Ex. 13. In the call, Scheffler did not ask any questions about the garnishment notice beyond asking why Gurstel sent it to him:

>> Salter: Are you calling in regards to the, the garnishment disclosure you received?

>> Scheffler: Well yeah I mean I got that. I mean you guys have on here call if I have any questions. So, I

>> [unintelligble]. (Salter interrupts)

>> Salter: Alright, so what's the what's the question you have?
>> Scheffler: Well, I guess why are you guys sending this stuff to, to I don't know, I don't even know why you guys are bothering really to be honest with you.

> Scheffler Decl. Ex. G, at 1-2. Thereafter, Scheffler baited Salter into discussing possible resolution of the debt:

>> Salter: What's your confusion? You have twelve thousand none hundred and twenty dollar debt that they're trying to recover.

>> Scheffler: Ok, so what am I going to do about that?

>> Salter: Are you able to pay it?

>> Scheffler: No.

23

> Salter: Ok. Uhh, are you in a position to where you wanna try to resolve it?
>
> Scheffler: Well I mean possibly at some point, I mean what are you saying, what are you offering?

Id. at 2.

> Scheffler then complained that Gurstel was improperly trying to collect on the debt, to which Salter responded, "You called me right?" Id. at 5. When it became clear that the conversation would not be productive, Salter said "I mean I don't wanna go round and round with you. If your intent is to not resolve it that's fine; or if you don't have the ability to do so that's fine." Id. The call concluded soon thereafter. Id. at 6.

(ECF No. 78, pp. 3-4; Appellant App. 374-375) (footnote omitted).  In granting

summary judgment on Scheffler's § 1692c(c) claim, Judge Doty found that:

> Scheffler's telephone conversation with Salter, which Scheffler initiated, is likewise insufficient to constitute an FDCPA violation. Salter handled the call appropriately and only asked Scheffler about resolving the debt after Scheffler said "Ok, so what am I going to do about that [referring to the debt]?"  Scheffler Decl. Ex. G, at 2. When reviewed as a whole, the call was an unsubtle and ultimately unsuccessful attempt to provoke Salter into committing an FDCPA violation. At no time did Gurstel, either in writing or in the telephone call, demand payment on the debt or otherwise violate the FDCPA as alleged. Indeed, rather than pressuring Scheffler to pay the debt, Salter simply said, "If your intent is to not resolve it that's fine; or if you don't have the ability to do so that's fine." Id. at 5.

(ECF No. 78, pp. 7-8; Appellant App. 378-379).   Judge Doty correctly rejected

Scheffler's arguments and properly dismissed his § 1692c(c) claim.  The District

Court's dismissal of the § 1692c(c) claim should be affirmed.

### C.   Scheffler waived the cease by calling Gurstel on September 21, 2015.

As an additional reason for granting Gurstel summary judgment on

Scheffler's § 1692c(c) claim, Judge Doty found that Scheffler waived his cease by

his own conduct and words during the September 21, 2015 conversation:

> Even if construed as an effort to collect on the debt, Scheffler's conduct and words constituted a waiver of his cease letter. See Backlund v. Messerli & Kramer, P.A., 964 F. Supp. 2d 1010, 1015-16 (D. Minn. 2010) (quoting Clark v. Capital Credit Collections Servs., Inc., 460 F.3d 1162, 1168 (9th Cir. 2006))(adopting the view that "a debtor may waive the rights created by a cease communications directive" if the waiver is "knowing and voluntary" and "the least sophisticated debtor would understand that he or she was waiving his or her rights under § 1692c(c)"). Scheffler initiated the phone call to Gurstel, responded vaguely when asked what questions he had about the garnishment notice, and steered the conversation to possible resolution of the debt. His waiver was thus knowing and voluntary, just as it would be were he an unsophisticated debtor.

(ECF No. 78, p. 8; Appellant App. 379).  In his opening brief, Scheffler contends

that there are allegedly disputed, material facts that prevented summary judgment

on the waiver issue.  (Appellant's Brief, p. 22).  This contention revolves around

the claim that Gurstel did not comply with its own rules requiring that its collection

25

representatives "must confirm on the recorded line that they [consumers] are retracting their cease request and wish to communicate with the Firm regarding the debt." (Appellant's Brief, p. 22). Scheffler asserts that because Gurstel did not comply with its own policy, fact issues exist as to whether his waiver was knowing and voluntary. That assertion falls wide of the mark.

Nothing in the FDCPA prohibits Gurstel from establishing procedures that exceed the protections afforded by the Act. Moreover, nothing in the FDCPA prohibits Gurstel from implementing procedures that are designed to protect it from debtors such as Scheffler, who would seek to manufacture FDCPA claims or entrap Gurstel's employees. However, failure to comply with a firm policy is simply not relevant. What matters is whether Gurstel complied with the FDCPA itself.

The recording and transcript of the call both reveal that:

- Scheffler initiated the call;

- he chose to stay on the call;

- he engaged in conversation with Salter, asked questions, and responded to answers from Salter;

- at no time did Scheffler demand that the call end;

- at no time did Scheffler demand (or even ask) that he be connected to an attorney; and

Appellate Case: 17-2141     Page: 34     Date Filed: 09/06/2017 Entry ID: 4576135

- at no time did Salter refuse to end the call or refuse to allow Scheffler to speak to an attorney.

(ECF No. 68-1, Ex. 2 and 68-3, Ex. 13, 69; Appellee App. 90-97, 566-567, 568.) These facts are undisputed and indisputable.

Despite this uncontroverted summary judgment evidence, Scheffler nevertheless claims that Gurstel violated his cease request because it participated in the phone call that Scheffler initiated. Such a claim fails as a matter of law, as Scheffler waived the cease request when he voluntarily called Gurstel's office and engaged Salter in conversation. *See Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1168 (9th Cir. 2006). "We further note that, as a general rule, 'a party may waive a benefit of a provision of a statute … enacted … for his protection.'" *Id.* at 1170 (citing *Globe Grain & Milling Co. v. De Tweede Northwestern & Pacific Hypotheekbank*, 69 F.2d 418, 422 (9th Cir. 1934)). *Clark* recognized that a consumer can waive his cease rights under Section 1692c(c) by initiating communication with the debt collector. "Legislative history indicates that Congress enacted the FDCPA to protect consumers from 'improper conduct' and illegitimate collection practices 'without imposing unnecessary restrictions on ethical debt collectors.'" *Clark*, 460 F.3d at 1169-1170 (citing S.Rep. No. 95-382 at 1 (1977), *reprinted* in 1977 U.S.C.C.A.N. 1695, 1696, 1698-99.) "Certainly, there is nothing inherently abusive, harassing, deceptive or unfair about a return

27

phone call." *Clark,* 460 F.3d at 1170. Further, by footnote, the Court added:

> Legislative history also reveals a non-exhaustive list of practices that, in enacting the FDCPA, Congress considered to be illegitimate: "threats of violence; obscene language; the publishing of 'shame lists;' harassing or anonymous telephone calls; impersonating a government official or attorney; misrepresenting the consumer's legal rights; simulating court process; obtaining information under false pretenses; collecting more than is legally owing; and misusing postdated checks.

*Id.* at FN 4 (citing S.Rep. No. 95–382 at 2, 4, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696, 1698). A return telephone call, in and of itself, is not analogous to these practices. *Id.* Indeed:

> [T]o hold that a debt collector may not respond to a debtor's telephone call regarding his or her debt would, in many cases, "force honest debt collectors seeking peaceful resolution of the debt to file suit in order to resolve the debt – something that is clearly at odds with the language and the purpose of the FDCPA."

*Clark,* 460 F.3d at 1170 (*citing Lewis v. ACB Business Services*, 135 F.3d 389, 399 (6th Cir. 1998)).

The FDCPA does not protect consumers who intentionally distort communications or make irrational claims. *Lindley,* 2012 U.S. Dist. LEXIS 175935, at *5 (*citing McMurray v. ProCollect, Inc.* 687 F.3d 665, 669 (5th Cir. 2012)); *White,* 200 F.3d at 1020. Scheffler should not be permitted to distort the

28

nature and substance of the call, nor should his irrational assertions about the call be given credence. Judge Doty's finding that Scheffler waived his cease, and his summary judgment in favor of Gurstel on Scheffler's § 1692c(c) claim should be affirmed.

4.  **THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGENT ON SCHEFFLER'S 15 U.S.C. § 1692e(10) CLAIM.**

Scheffler claims that Gurstel's cover letter, coupled with the single conversation with him, violated § 1692e(10). (Appellant's Brief, pp. 22, 34-37). With respect to the cover letter, Scheffler claims that letter violated § 1692e(10) because the sentence inviting him to call one of Gurstel's collection representatives was in bold font. (*Id.*) According to Scheffler, because this sentence was in bold font it was a "directive" to him to call Gurstel and it also implied that once he followed this "directive" an individual at Gurstel "with skill to address the garnishment summons would answer such question." (*Id.*, at 35.) His argument is nonsensical and Judge Doty properly dismissed his § 1692e(10) claim.

A.  **Gurstel's notification of the garnishment and invitation to talk to a collection representative in its August 11, 2015 cover letter was not a false, misleading or deceptive misrepresentation.**

Scheffler alleges that "Defendant's cover letter's statement, 'If you have any questions, please contact one of our collections representatives at 1-800-514-0791,' was a false, misleading and clandestine attempt to violate of the cease under the false pretext of an invitation to discuss the garnishment." (SAC ¶ 25) In the

29

Eighth Circuit, the violation that Scheffler alleges is assessed based upon whether an "unsophisticated consumer" would be deceived by the representation or conduct at issue. *Duffy*, 215 F.3d at 872. "These tests are designed to protect consumers of below average sophistication or intelligence, but they also contain an objective element of reasonableness that prevents liability for bizarre or idiosyncratic interpretations of collection notices." *Peters*, 277 F.3d at 1055.

Here, Gurstel's letter provided a telephone number to Scheffler in case he had any questions. As the court observed in *Turner*, *supra*, it is both possible and desirable for a creditor to establish cordial relations with its debtors. The involuntary garnishment process causes many debtors to want to contact their judgment creditors' lawyers, and providing a telephone number in the garnishment transmittal is simply a courtesy to unsophisticated consumers who want to call Gurstel's office. *See Lindley*, No. 2:12-CO-109, 2012 U.S. Dist. LEXIS 175935, at *13 (citing *Mabbitt,* 2008 U.S. Dist. LEXIS 20446, at *4) (invitation to call was a mere courtesy)).

Furthermore, Gurstel's letter speaks for itself. There is nothing in it that is false, misleading, or deceptive, as correctly found by Judge Doty:

> Scheffler argues that Gurstel violated § 1692e(10) by falsely indicating that he could call the number on the letter to discuss the garnishment notice with a lawyer. Scheffler's argument is unavailing. The letter does not state that the number provided will be answered by an attorney prepared to answer questions solely about

garnishment. Rather, the letter expressly notified Scheffler that he could contact a "collection representative" by calling the number. And he in fact spoke with a collection representative when he called. As a result, there is nothing deceptive about the information provided in the letter. It certainly was not deceiving to Scheffler, whose experience in debt collection and FDCPA litigation belies his grievance, but neither would it be deceiving to an unsophisticated consumer.

(ECF No. 78, p. 9; Appellant App. 380). Scheffler's arguments regarding the meaning of Gurstel's letter have no basis in reality. They are the arguments of a manipulative, professional plaintiff who projects his own dishonesty on all whom he encounters. Even with the bold font, he was not "directed" or "commanded" to call Gurstel. Scheffler chose to call Gurstel. Further, nothing in the letter indicates that a collection representative – be it a lawyer or non-lawyer – would be able to address every single question that someone might ask about the garnishment paperwork.

In this instance, however, Scheffler never asked *any* substantive questions about the garnishment papers. The entire tone of the call was one of trying to harass Salter and to provoke or manufacture an FDCPA claim. There is no competent evidence in the record to suggest that Salter was not an appropriate collection representative to talk with Scheffler, nor is there any evidence that would suggest that Salter could not or would not have escalated the call to an

attorney if Scheffler had requested an escalation or asked a question that was beyond Salter's ability to answer.

The transcript and recording of the call also speak for themselves. Salter said nothing false, misleading or deceptive during the September 21, 2015 telephone conversation. On the other hand, Scheffler's manipulative intent comes through clearly. He had no real questions about the garnishment. He did not ask to speak to an attorney. He had no need to call Gurstel as he had an attorney who had represented him in multiple collection-related matters, including the *Messerli & Kramer* case. *See* ECF No. 68-1, Ex. 2, and 68-3, Ex. 13, 69; Appellee App. 90-97, 566-567, 568; *see also* 68-2, Ex. 12, Scheffler Dep. at 88:4 - 88:14, Appellee App. 287, wherein Scheffler testified:

> 88
> 4   Q.  At the time that you called Gurstel Chargo,
> 5       Peter Nickitas was your lawyer in multiple
> 6       cases, correct?
> 7   A.  Yes.
> 8   Q.  You had the ability to call Mr. Nickitas and
> 9       ask all the legal questions you wanted to ask
> 10      about garnishments, didn't you?
> 11          MR. NICKITAS:  Object.  It goes to
> 12      attorney-client privilege.  You don't have to
> 13      answer that.
> 14          THE WITNESS:  I could've.

Scheffler is a highly litigious debtor who has boasted to at least one reporter about suing debt collectors. *See* http://www.startribune.com/ex-collector-deep-in-

Appellate Case: 17-2141    Page: 40    Date Filed: 09/06/2017 Entry ID: 4576135

debt-knew-how-to-fight-back/99676614/.  While the FDCPA does not preclude a debtor from profiting from non-payment of his debts, it was not intended to be used as a sword to provoke or manufacture alleged violations of the Act.  It is clear from the call transcript and call recording that this is exactly what Scheffler attempted to accomplish.

Scheffler's conduct in this case is similar to that of the plaintiff in *Huebner v. Midland Credit Mgmt.*, No. 14 Civ. 6046 (BMC), 2016 U.S. Dist. LEXIS 156246 (E.D.N.Y. November 10, 2016), a case in which a plaintiff "experienced with the Fair Debt Collections Practice Act ("FDCPA"), 15 U.S.C. § 1692, sought to parlay his $131 debt into a technical violation so that he could serve as a class representative in a case where there was no FDCPA violation . . ."  The *Huebner* court observed that:

> . . . plaintiff's conduct was the antithesis of that which the "least sophisticated consumer" would have undertaken.  He deliberately ran the collection agent in circles in an effort to confuse her. The least sophisticated consumer would answer a simple question simply, or at least say that he was declining to answer. He would not seek to embroil a collection agent in an existential discussion of the meaning of the word "non-existent." That is not being a "tester." Rather, in a broad sense, that is what used to be called barratry.

*Id*. at *16-17. The call transcript and call recording show that Scheffler has attempted a similar course of conduct.   "The FDCPA was designed to prevent harm to the 'least sophisticated consumer' by debt collection practices that would

33

be regarded as abusive and unacceptable. It was surely not intended to serve as a legal ATM machine." *Weber v. Prof'l Claims Bureau, Inc.*, 2017 U.S. Dist. LEXIS 109904, *8 (E.D.N.Y. July 14, 2017). Indisputably, that is what Scheffler is doing.

### B.    No "bait and switch" occurred here.

Scheffler alleges that the cover letter misled him into believing that a lawyer would address his questions regarding the garnishment. He claims that the letter was essentially a bait and switch maneuver to trap him into being subjected to a non-lawyer debt collector employee harassing him about the underlying debt. (SAC ¶ 34-35). These allegations fail, as Scheffler never asked to speak to an attorney and was never refused permission to speak with one. Gurstel had a policy designed to ensure that he would have been able to speak with an attorney, had he merely asked. (ECF No. 68; Appellee App. 70-75). Scheffler has not provided a scintilla of evidence to support the contention that because a non-attorney answered a general, inbound line he could not have spoken to an attorney upon request.[3] "Bait and switch" does not occur when there is neither a switch nor an attempt to effectuate one. The only reason why Scheffler did not end up speaking with a Gurstel attorney is because he never asked for one. *See* ECF No. 68-2, Scheffler Dep. at 150:4 – 24, Appellee App. 350:

---

[3]    The court could take judicial notice that it is a common practice in the legal community that law firm phone lines are commonly answered by non-attorney support staff.

Appellate Case: 17-2141    Page: 42    Date Filed: 09/06/2017 Entry ID: 4576135

4    Q.    Mr. Scheffler, I didn't hear you once mention

5       how did you get my bank account or say

6       anything about shotgun garnishments?  You

7       never asked about those things, did you?

8    A.  I think the conversation kinda went into a

9       different direction.

10   Q.  I didn't hear you once ask for Mr. Wold.

11   A.  Well, like I told you earlier, I didn't know

12      Mr. Wold's name or anything else for that

13      matter.  I believe I found it out looking at

14      the garnishment summons after the fact, after

15      the phone call.  I noticed his name on there.

16   Q.  You had the garnishment summons in your

17      possession together with the cover letter,

18      correct?

19   A.  Correct.

20   Q.  You didn't say, "I want to speak to an

21      attorney," you said, "Do I need to speak to

22      an attorney or have my attorney do so,"

23      correct?

24   A.  That sounds about right.

Scheffler's bait and switch claim is a mere fantasy, built upon assumptions and

conjecture.  Judge Doty correctly rendered summary judgment in favor of Gurstel

on the § 1692e(10) claim, and should be affirmed.

**35**

**5.    SCHEFFLER IS JUDICIALLY ESTOPPED FROM PROSECUTING THIS LITIGATION.**

**A.    Introduction.**

Gurstel moved for summary judgment on the ground that Scheffler is judicially estopped from prosecuting this litigation. (ECF Nos. 66, 76; Appellee App. 45-51, 569-580). In granting summary judgment for Gurstel and dismissing Scheffler's claims, Judge Doty did not address or rule on Gurstel's judicial estoppel arguments. (ECF No. 78; Appellant App. 372-381). This Court, however, "may uphold a grant of summary judgment for any reason supported by the record, even if different from the reasons given by the district court." *See, e.g.*, *Bishop*, 723 F.3d at 961 (8th Cir. 2013). Accordingly, Gurstel re-urges its judicial estoppel argument as an additional basis for affirming summary judgment in its favor.

It is a fundamental proposition that one cannot play "fast and loose with the courts." *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir. 1987). As is explained below, Scheffler has attempted to do just that, telling the District Court in this case that he had claims against Gurstel while telling other courts (under oath) that such claims did not exist.

In each case in which an IFP affidavit is filed it is the job of the court to assess the IFP applicant's assets and income in order to decide whether the IFP application should be granted. A lawsuit (or simply a chose in action) is such an

Appellate Case: 17-2141     Page: 44     Date Filed: 09/06/2017 Entry ID: 4576135

asset. At a time when he knew of the existence of his claims in this case Scheffler stated under oath in IFP affidavits filed in three other cases that he had no such asset by answering "0.00" in the "other assets" category. (ECF No. 68-1, Ex. Nos. 3-11; Appellee App. 98-199). That Scheffler was represented in filing those affidavits by the same counsel as in this case underscores and exacerbates the seriousness of such conduct. Regardless of whether he recognized a chose in action as an asset, the lawyer representing him in this case should have done so when he filed the IFP affidavits in other cases.

Scheffler secured IFP orders that were predicated upon his false IFP affidavits.[4] Scheffler must lose in this case, as he has told the courts in those other cases, under oath, that his claims in this case did not exist. As a result, Scheffler is judicially estopped from prosecuting this action.

Gurstel provided the District Court with the undisputed facts supporting its judicial estoppel argument. (ECF No. 67; Appellee App. 54-69). Scheffler's deposition testimony and the exhibits to the Goltz declaration filed with the District Court establish those facts. (ECF Nos. 68-1, Ex. 3-11 and 68-2, Ex. 12; Appellee App. 98-199, 200-565).

---

[4] This is part of a multi-year pattern of behavior in which Scheffler and his attorney have concealed from courts in the District of Minnesota Scheffler's assets (*i.e.*, various lawsuits that he has filed or threatened to file) and his income from those assets.

### B.     Judicial Estoppel.

"Judicial estoppel is an equitable doctrine which 'prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" *Van Horn v. Martin*, 812 F.3d 1180, 1182 (8th Cir. 2016) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)).  The doctrine arises most often in the bankruptcy context, as a debtor who seeks a discharge in bankruptcy must disclose under penalty of perjury, all of his or her assets, and "[a] potential legal claim is undisputedly an asset and should be claimed as such in a bankruptcy petition." *Harvey v. S. Minn. Beet Sugar Coop.*, No. 02-4934 (PAM/RLE), 2004 U.S. Dist. LEXIS 2923, *5 (D. Minn. Feb. 26, 2004).[5] *See, also, Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) (*citing In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir.1999)); *Calhoun v. Wal-Mart*, 2007 U.S. Dist. LEXIS 31918, *1 (E.D. Mo. May 1, 2007), *aff'd* at 330 Fed. Appx. 119, 2009 U.S. App. LEXIS 17382 (8th Cir. 2009).  Even contingent and representative claims (*e.g.*, Scheffler's class claim) must be disclosed or else be subject to judicial estoppel. *United States ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909, 919 (8th Cir.

---

[5]     "As the Eighth Circuit has made clear, 'the property of the bankruptcy estate includes all causes of action that the debtor *could have brought* at the time of the bankruptcy petition.'" *United States ex rel. Gebert v. Transport Admin. Servs.*, 260 F.3d 909, 913 (8th Cir. 2001) (emphasis added); *Harvey*, 2004 U.S. Dist. LEXIS 2923, at *5.  There can be no doubt that a lawsuit is a material asset.

Appellate Case: 17-2141     Page: 46     Date Filed: 09/06/2017 Entry ID: 4576135

2001) (applying judicial estoppel to a plaintiff who had failed to disclose to the bankruptcy court the *qui tam* claims that he then asserted); *Harvey v. S. Minn. Beet Sugar Coop.*, *supra* (applying judicial estoppel to an employment discrimination suit where the plaintiff filed her EEOC complaint three days after her bankruptcy petition was filed, yet her potential cause of action was not disclosed as an asset); *Cover v. J.C. Penney Corp.*, No. 15-515 (RHK/SER), 2016 U.S. Dist. LEXIS 66964 (D. Minn. May 20, 2016) (applying judicial estoppel to a Plaintiff who hailed to disclose in her bankruptcy filings a cause of action for which she had filed a charge with the EEOC, completed an EEOC intake questionnaire, and been interviewed by an EEOC Investigator more than four months before she filed her bankruptcy petition).

In ordinary civil cases, no such disclosure obligation exists. However, Scheffler is a serial filer of civil litigation, and most of the cases that he files are initiated with an application to proceed without payment of costs and an accompanying IFP affidavit. Affidavits that he used in other cases to secure a waiver of his court costs negate the existence of the claims asserted in this case. For example, in *Scheffler v. Tapfury, LLC,* Scheffler listed his "Other assets (value)" as $0.00. *See* ECF No. 68-1, Ex. 7, Appellee App. 154-159. In the same affidavit he listed income of $70 and a bank balance of $0.01. Gurstel suggests that this was done in a manner that creates the false impression of candor while in

reality delivering the opposite. Gurstel addressed in ECF No. 68-1, Ex. 3-11, Appellee App. 98-199 only the three IFP affidavits that were filed while Scheffler knew of his causes of action in this case. If the Court were to take judicial notice of the District of Minnesota's docket (and Gurstel requests that it do so) it would find that Scheffler has a multi-year history of failing to disclose in IFP affidavits both his filed and threatened lawsuits and his income from settlements of same.

Scheffler cannot claim innocence or ignorance. The PACER Docket shows that in the *Tapfury* case it was his attorney in this case, Mr. Nickitas, who filed the IFP affidavit reflected in ECF No. 68-1, Ex. 7, Appellee App. 154-159. The same is true in the *McDonough* and *Dohman* cases reflected in ECF No. 68-1, Ex. 4 and 10, Appellee App. 125-130, 192-197.

When a plaintiff seeks to proceed *in forma pauperis* he is required to execute an affidavit disclosing his income and assets. That is so the district court can make an informed decision as to whether the plaintiff should be permitted to proceed without payment of court costs. The affidavit of inability to pay costs is normally the sole evidence considered by the court in deciding whether to permit the plaintiff to proceed *in forma pauperis*. In this regard D. Minn. L.R. 4.2(a)(2) provides:

> (2) *Proceedings in Forma Pauperis.* If a party seeks to proceed in forma pauperis, the party must present to the clerk the complaint or other case initiating document and an application to proceed in district court without

Appellate Case: 17-2141    Page: 48    Date Filed: 09/06/2017 Entry ID: 4576135

> prepaying fees or costs. The clerk must file the case-initiating document as if the filing fee had been paid and must submit the application to the court.

A review of the summary judgment evidence reveals that Scheffler sought to game the legal system by making contradictory statements to Judge Doty and other courts in the District of Minnesota. On the one hand, Scheffler alleges both individual and class claims in this case. On the other hand, he concealed the existence of this asset (*i.e.*, his alleged cause of action) in seeking and obtaining in other cases orders allowing him to proceed without having to pay costs. Scheffler is barred from profiting from this deceptive course of conduct under the doctrine of judicial estoppel.

An IFP affidavit is a document signed under penalty of perjury, imposing on the plaintiff the duty to make a complete and accurate disclosure of his income and assets. Execution of a false pauper's affidavit is grounds for criminal punishment. 18 U.S.C. § 1001; *see, also, Adkins v. E.I.Du Pont de Nemours & Co.*, 335 U.S. 331, 338, 69 S. Ct. 85, 93 L. Ed. 43 (1948) (observing that a false pauper's affidavit might subject the affiant to criminal liability). The execution of a false pauper's affidavit is also serious enough to warrant dismissal of the case in which it was filed. *Golden v. Newsome*, 173 Ga. App. 321, 322, 326 S.E.2d 521, 523 (Ga. Ct. App. 1985).

41

Application of judicial estoppel to statements made in a pauper's affidavit is not a novel concept. In *Shayesteh v. Raty*, 404 Fed. Appx. 298, 2010 U.S. App. LEXIS 25246 (10th Cir. 2010), the plaintiff brought suit against the defendants based upon his alleged ownership of the contents of a safe deposit box. However, in a prior proceeding the plaintiff was allowed to proceed *in forma pauperis*, and the district court held that "[a]llowing Plaintiff to proceed with his present claims, which are founded on the allegation that Plaintiff actually held millions of dollars worth of assets in a safe-deposit box at the time he induced the court to allow him to proceed *in forma pauperis*," would reward "precisely the type of fraud on the court which the doctrine of judicial estoppel was designed to address." *Id*. at *11. The Tenth Circuit Court of Appeals affirmed, holding that to do otherwise would allow the plaintiff the benefit of having misled the court that had granted his *in forma pauperis* application. That is precisely the circumstance presented here. If Scheffler is permitted to proceed with this case then he derives the benefit of having failed to disclose his alleged causes of action in securing leave to proceed IFP in the *McDonough*, *Tapfury*, and *Dohman* cases.

> And as the district court rightly explained, permitting Mr. Shayesteh to pursue claims involving assets he concealed from the criminal court would provide no incentive for candor before federal tribunals and would instead only reward dissembling. This case thus implicates the core concern undergirding, and calls out for application of, judicial estoppel doctrine.

Appellate Case: 17-2141    Page: 50    Date Filed: 09/06/2017 Entry ID: 4576135

*Id*. at *14.

This court has held that a court must look to three factors to determine whether judicial estoppel should apply: (1) whether a party's later position is "clearly inconsistent" with its previous position; (2) whether the party succeeded in persuading the first court to accept its position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped. *Van Horn*, 812 F.3d at 1182. Applying these factors it is clear that Scheffler is judicially estopped from prosecuting this case.

Scheffler argued to the District Court that a requirement to disclose assets truthfully in an IFP affidavit would have an "absolute chilling effect on anyone desiring access to the federal courts as a pauper." That argument has no merit. There is nothing chilling about expecting affiants to tell the truth or demanding that a court be given a would-be plaintiff's true financial state before that person is allowed to obtain a waiver of the costs that others must pay.

Furthermore, to the extent that Scheffler may attempt to argue to this Court, as he did in the District Court, that he could not disclose his assets because it would require him to "gaze into a perfect crystal ball," he misses the point. Gurstel does not base its judicial estoppel defense on the theory that Scheffler undervalued or misvalued his claim. Gurstel asserts that Scheffler denied under oath the very existence of the claim by failing to list it. Bankruptcy litigants have no better

43

crystal ball than Scheffler, and Gurstel does not seek to hold him to any higher standard than that which is well-established in the bankruptcy context.

Scheffler's focus in his briefing before the District Court concerned the relief that he sought in his IFP applications is entirely misplaced. It is not the magnitude of the relief that counts, it is the fact that he made, and benefitted from inconsistent sworn statements.

Scheffler offered no summary judgment evidence that would rebut evidence offered by Gurstel establishing that: (1) he executed sworn *in forma pauperis* affidavits that did not disclose this asset; (2) he did so at a time when he knew this asset existed; (3) in two of the cases the person who filed those affidavits (after this case was already pending) is the same attorney who signed the Complaints in this case; and (4) courts acted in reliance upon those affidavits. Moreover he offered no case law to contradict Gurstel's assertion that the doctrine of judicial estoppel prohibits him from prosecuting a claim whose existence he has denied under oath. Instead, he asked the District Court to disregard the core principle of judicial estoppel – that one who takes a position under oath and receives relief based upon that attestation may not then take a contrary position. *See, e.g.*, *Van Horn v. Martin*, 812 F.3d 1180, 1182 (8th Cir. 2016). Scheffler wholly failed to overcome Gurstel's judicial estoppel defense and, as a matter of law, Judge Doty's summary judgment in favor of Gurstel should be affirmed for that additional reason.

44

## CONCLUSION

For all of the foregoing reasons, the order and judgment of the District Court granting summary judgment in favor of Gurstel and dismissing Scheffler's claims in this case pursuant to Fed. R. Civ. P. 56 should be affirmed.

Appellate Case: 17-2141    Page: 53    Date Filed: 09/06/2017 Entry ID: 4576135

## <u>CERTIFICATE OF COMPLIANCE WITH WORD LIMITS</u>

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I hereby certify that the textual portion of the foregoing brief (exclusive of the tables of contents and authorities, certificates of service and compliance, but including footnotes) contains 11,103 words as determined by the word counting feature of Microsoft Word 2010.

Pursuant to Circuit Rule 28A(h), I also hereby certify that the electronic file of this Brief has been submitted to the Clerk via the Court's CM/ECF system. The files have been scanned for viruses and are virus-free.

DATED:  September 1, 2017          /s/  *Manuel H. Newburger*
                                   Manuel H. Newburger
                                   Barron & Newburger, P.C.
                                   1212 Guadalupe, Suite 104
                                   Austin, TX 78701
                                   Telephone: 512-476-9103, Ext. 216
                                   Facsimile: 512-279-0310
                                   mnewburger@bn-lawyers.com

                                   ATTORNEY FOR APPELLEE

46

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2017, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *Manuel H. Newburger*
Manuel H. Newburger
Barron & Newburger, P.C.
1212 Guadalupe, Suite 104
Austin, TX 78701
Telephone: 512-476-9103, Ext. 216
Facsimile: 512-279-0310
mnewburger@bn-lawyers.com

ATTORNEY FOR APPELLEE

47